■ In the Matter of JASON LADONE et al., Petitioners, v ALFRED LERNER, Respondent.—Proceeding pursuant to CPLR article 78 to review an order of the Administrative Judge of the Supreme Court, Queens County (Lerner, J.), dated December 4, 1987, which modified a determination of the Justice presiding over a pending criminal proceeding under Queens County indictment number 890/87, and authorized audio-visual coverage of the trial of that proceeding; and motion by various members of the media for leave to intervene.

Ordered that the motion for leave to intervene is granted; and it is further,

Adjudged that the petition is granted, the order of the Administrative Judge is annulled and the determination of the Trial Justice is reinstated, without costs or disbursements.

The instant proceeding has been instituted by the petitioners, who are the defendants in an underlying criminal action, to review an order of the respondent Administrative Judge of the Eleventh Judicial District. The Administrative Judge modified an order of the Justice presiding at the ongoing trial of that criminal action, issued pursuant to Judiciary Law § 218 (as added by L 1987, ch 113) and the rules of the Chief Administrative Judge promulgated pursuant thereto (22 NYCRR part 131), so as to permit audio-visual coverage of the summations of trial counsel and the court's charge to the jury.

At issue is the third in a series of orders issued by the Administrative Judge upon review of orders of the Justice presiding at the criminal action in relation to a media request for access for audio-visual coverage thereof. The Trial Justice had first denied a request for audio-visual access to the trial proceedings made during the defense case. Upon review, the Administrative Judge remitted the matter for further proceedings upon the ground that the Trial Justice had denied the application without consultation with the parties concerned as contemplated by the statute and rules (see, Judiciary Law § 218 [3] [d]; 22 NYCRR 131.4 [a] [3]). The Trial Justice thereupon proceeded to conduct a hearing at the conclusion of which he again denied the media's request for audio-visual access. Upon a second review, the Administrative Judge upheld the Trial Justice's determination denying audio-visual coverage of the testimony of defense witnesses, but noted that no specific request had been made by the media or ruled upon by the Trial Justice as to audio-visual coverage of the summations and charge. Accordingly, the media thereupon made a de novo application to the Trial Justice for audio-visual access to cover the summations, charge and verdict.

After a further hearing at which the media, prosecution and defense counsel were present, the Trial Justice denied the application by decision dated December 4, 1987, citing seven areas of concern raised by defense counsel, which he indicated he shared, and which he summarized as follows:

"1. Although the First Amendment (freedom of the press and the public's right to know) is not an issue here, the Sixth Amendment (right to a fair trial) is an issue here. The media in all its forms (with the exception of cameras) has covered the trial extensively and responsibly. The presence of cameras in the courtroom at this stage of the proceedings cannot add any more, but may affect the rights of the defendants. There must be a sensible accommodation between the First Amendment rights and Sixth Amendment rights.

"2. The timing of the implementation of the cameras is objectionable in the final stages of the proceeding. During the selection of the jury, it was never predicted there was a possibility that there would be audio-visual coverage of this trial. There should have been maximum opportunity to prepare the jury for the introduction of cameras in the courtroom and to assess the reaction of the prospective jurors so that counsel could intelligently exercise their peremptory challenges. It is too late to ask the jury what effect the cameras will have on their deliberations and their ultimate decision— the guilt or innocence of the defendants.

"3. This is an experimental program and it mandates a pretrial conference. There was no pre-trial conference here, to the detriment of the defendants.

"4. There will be a psychological effect on the jury which is difficult to assess. The effect could change the balance of the trial and it is too dangerous. In the event of a conviction, defense has no remedy as defense is not permitted to inquire into jury verdicts and whether or not the cameras affected their deliberations.

"5. The jury has sat over two months with the presence of the media throughout the entire proceedings. They are relaxed and comfortable. It is unfair to this jury to now advise them about cameras in the courtroom. They have no input into whether cameras should be in the courtroom. It is unfair to them and it is presumptuous to say that it will not affect them.

"6. Jurors were never consulted during the voir dire. There were a number of jurors who felt uncomfortable by the presence of the media and they were excused. More jurors might have been excused had the defense known what effect cameras would have on them.

"7. The spectators at this trial have resulted in a very charged audience. The defense does not want to be restricted in their summations in the fear that what they say may trigger off demonstrations or disturbances in the courtroom by the presence of cameras."

By decision and order also dated December 4, 1987, the Administrative Judge overruled the Trial Justice. He specifically noted, however, that the question of audio-visual access at the time of verdict had not been passed upon by the Trial Justice and he thus refrained from ruling on that issue. It is this third order of the Administrative Judge which the petitioners seek to review in this proceeding.

Initially, it is our view that the instant proceeding is in the nature of mandamus to review a determination which is essentially civil and administrative in nature and collateral to the criminal action now pending in the Supreme Court, Queens County (see, CPLR 7803 [3]). While we recognize that pursuant to Judiciary Law § 218 (3) (c) an order of the Trial Justice granting or denying a request for audio-visual coverage is a part of the record in the criminal action, the statute does not provide that the order of the Administrative Judge who has reviewed the Trial Justice's determination is similarly part of the record. Accordingly, our review is not circumscribed by the recent Court of Appeals case of *Matter of Lipari v Owens* (70 NY2d 731), which pertains only to proceedings in the nature of prohibition.

In enacting Laws of 1987 (ch 113, § 1) the Legislature recognized that "an enhanced public understanding of the judicial system is important in maintaining a high level of public confidence in the judiciary" and that modern technology now makes it feasible to permit, on an experimental basis, audio-visual coverage of court proceedings. However, the Legislature also acknowledged that such proceedings "are complex, often involving human factors that are difficult to measure", that there "may be inherent problems in [a specific] court proceeding which could possibly be complicated by audio-visual coverage", that the "dignity and decorum of the courtroom" should not be interfered with, and that "an atmosphere unsuited to calm deliberation and impartial decision making" must not be created (L 1987, ch 113, § 1).

Upon our review of the record, we conclude that the determination of the Trial Justice declining to permit audio-visual coverage of summations and his charge to the jury is amply supported and, under the circumstances, we find that he did not abuse his discretion.

In this case we are presented with an extended trial, now almost three months long, which has been conducted in an emotionally charged, highly volatile atmosphere. As noted by the Trial Justice in denying the application for audio-visual coverage, the media has covered the trial extensively and responsibly, the trial has proceeded to its final stages without the presence of cameras, and it is now too late to determine what effect the presence of cameras would have on the jury.

The Administrative Judge found, based on the concession of the parties, that the Trial Justice has "controlled the courtroom well, and that the trial has proceeded in an orderly

manner". The delicate balance that the Trial Justice has maintained, which is to the benefit of both the prosecution and the defense and in the furtherance of the proper functioning of our system of justice, should not be disturbed absent a clear showing of an abuse of discretion.

Accordingly, while the Administrative Judge has the power to review whether the Trial Justice has abused his discretion, in this case there was no such abuse. The Administrative Judge erred in substituting his discretion for that of the Trial Justice. Mollen, P. J., Brown, Lawrence, Weinstein and Kooper, JJ., concur.